IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| RICARDO MCCLINTON and<br>DORIS JONES, Surviving Parents of<br>Jamari McClinton, Deceased,<br><br>     Plaintiffs,<br><br>v.<br><br>WARDEN WALTER BERRY and<br>COUNSELOR JARVIS PRIMUS,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action File No.<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiffs Doris Jones and Ricardo McClinton and hereby file this Complaint against Defendants as follows:

## INTRODUCTION

1.

Plaintiffs' son was murdered while in the custody of the Georgia Department of Corrections. When he was an inmate at Philips State Prison, gang members placed a bounty on his head and solicited a murder-for-hire via social media and contraband cell phones, which led the warden there to place him in protective custody until he could be transferred elsewhere. He was transferred to Baldwin

1

State Prison, where he was murdered shortly after his arrival because Defendants failed to keep him in protective custody despite having actual knowledge that he was the target of a gang-related murder-for-hire plot. This Complaint seeks to hold individual employees of the Department of Corrections liable for their deliberate indifference to the federal constitutional rights of Plaintiffs' son.

## JURISDICTION AND VENUE

2.

This action is brought pursuant to 42 U.S.C. §§1983 and 1988, as well as the Eighth and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §1331, §1343, §1343 and the forementioned constitutional and statutory provisions.

3.

Venue is proper in this Court pursuant to 28 U.S.C. §1391 and other applicable law because the cause of action arose within the boundaries of the Macon Division of the Middle District of Georgia, and on the further grounds that one or more parties are domiciled within said District and Division.

4.

All parties herein are subject to the jurisdiction of this Court.

## PARTIES

5.

Plaintiffs Ricardo McClinton and Doris Jones are citizens and residents of the United States and the State of Georgia, as was their deceased son, Jamari McClinton. As surviving parents of an adult who was unmarried and had no children, they bring this action for federal constitutional violations resulting in the wrongful death of their son against the above individual Defendants.

6.

At all times relevant herein, Defendant Walter Berry was the warden of Baldwin State Prison, responsible for the day-to-day operations of the prison as well as the safety and security of all inmates housed there. He may be served by request for waiver of service by First Class Mail sent in care of the Georgia Department of Corrections, 300 Patrol Road, Forsyth, Georgia.

7.

Defendant Jarvis Primus is the counselor employed by the Department of Corrections who was assigned to Plaintiff's son upon his transfer to Baldwin State Prison and is one of several prison employees who failed to ensure that Jamari remained in protective custody, failed to ensure that he was housed where his known enemies would not have access to him, and failed to intervene to protect

him from the known risk of murder that was the reason for his transfer to Baldwin in the first place. He may be served by request for waiver of service by First Class Mail sent in care of the Georgia Department of Corrections, 300 Patrol Road, Forsyth, Georgia.

8.

Plaintiffs have a good faith belief that discovery will identify other Department of Corrections employees who were aware of the serious risk of harm facing Jamari McClinton in view of his placement in protective custody and his transfer from Phillips to Baldwin, including but not limited to correctional officers and their supervisors, administrators and administrative employees, and those staff members responsible for diagnostic and security classifications, housing and cellblock assignments, segregation of individuals who were high-risk or incompatible, or otherwise monitoring and regulating the inmate population, including both Jamari McClinton and the inmate who answered the call to murder him. Said Defendants will be more particularly identified by amendment.

9.

At all times relevant herein, the above captioned Defendants were acting under color of law and on behalf of the State of Georgia.

# FACTS

10.

In July 2021, Jamari McClinton was an inmate at Phillips State Prison in Buford, Georgia who got into a fight with the prison gang leader who allegedly "ran the compound" at Phillips. After that fight, along with a series of incidents in which gang members extorted or attempted to extort money from Plaintiffs through Cash App payments under threats of violence against their son, a bounty-killing "contract" was placed on Jamari and advertised through social media to gang affiliates throughout the prison system.

11.

Jamari and his family learned about the murder-for-hire solicitation from others who saw it briefly pop up on their cell phones.

12.

After the fight with the gang leader, Jamari was placed in protective custody by the warden at Phillips.

13.

The warden at Phillips was also aware of the murder-for-hire contract against Jamari, which was why the warden decided that Jamari should be transferred to another facility.

14.

The warden at Phillips told Jamari that he was meeting with the gang leader who was responsible for the contract to inform him that Jamari was being transferred. It is unknown whether that meeting escalated or de-escalated the threat of violence, or whether it resulted in gang members being told where Jamari was going, but it appears that gang members through contraband cell phones and social media contacts would have found him wherever he was sent if he were released from protective custody or otherwise exposed to the general population.

15.

The social media solicitation for the murder stated that Jamari was being transferred and should not be "touched" until after he was transferred, presumably to prevent anyone at Phillips from being implicated, but it alerted gang members in other prisons to be on the lookout for him if they encountered him in the general population.

16.

After Jamari called his parents and told them he was being transferred, Plaintiff Jones called the Department to make sure that her son would remain in protective custody at whatever prison he was being transferred to, and the woman she spoke with checked the computer and assured her that he would be in

protective custody wherever he went.

17.

Jamari was transferred from Phillips to Baldwin State Prison on or about August 6, 2021.

18.

On August 9, 2021, Jamari was given the standard intake/orientation interview at Baldwin by his assigned counselor, Defendant Primus. During that face-to-face meeting, Jamari told Primus that there was a contract on his life and he was supposed to be in protective custody, but Primus took no steps to ensure that Jamari was kept in protective custody at Baldwin.

19.

Defendant Primus made no entry in the case notes or elsewhere in prison records that Jamari was supposed to be in protective custody, and he simply cut-and-pasted the following boilerplate language to the case notes as a summary of his meeting with Jamari:

> Offender states that he does not have any reservations at this current time. Offender was advised that if any issues should arise, to contact his building officer or counselor. Discussed suicide prevention with offender. Offender reports that he does not have any thoughts of harming himself or any prior history of self-injurious behavior. Discussed PREA, methods of reporting, and showed video Offender reports that he has not been sexually assaulted in the past. Offender did not request mental health or medical services. Offender states that

he does not have a need for a TTY machine or language line. Offender states that he understands proper visitation procedure. Offender received handbook and PREA pamphlet.

20.

The fact that Defendant Primus was told about the threat on Jamari's life constitutes actual knowledge of a known serious threat.

21.

The fact that Defendant Primus failed to take reasonable action in response to that known serious threat constitutes acts or omissions greater than gross negligence, and by choosing to take no action on the information amounted to a deliberate decision to expose Jamari to a known risk of murder.

22.

The fact that Defendant Berry accepted the transfer of Jamari with full knowledge that he was being transferred to Baldwin to protect him from a known risk of murder, yet failed to take appropriate steps upon Jamari's arrival to ensure that he remained in protective custody, also constituted to a failure to take reasonable action to a known serious threat by acts or omissions greater than gross negligence, thus amounting to a deliberate decision to expose Jamari to a known risk of murder.

he does not have a need for a TTY machine or language line. Offender states that he understands proper visitation procedure. Offender received handbook and PREA pamphlet.

20.

The fact that Defendant Primus was told about the threat on Jamari's life constitutes actual knowledge of a known serious threat.

21.

The fact that Defendant Primus failed to take reasonable action in response to that known serious threat constitutes acts or omissions greater than gross negligence, and by choosing to take no action on the information amounted to a deliberate decision to expose Jamari to a known risk of murder.

22.

The fact that Defendant Berry accepted the transfer of Jamari with full knowledge that he was being transferred to Baldwin to protect him from a known risk of murder, yet failed to take appropriate steps upon Jamari's arrival to ensure that he remained in protective custody, also constituted to a failure to take reasonable action to a known serious threat by acts or omissions greater than gross negligence, thus amounting to a deliberate decision to expose Jamari to a known risk of murder.

23.

Under the Eighth Amendment and clearly established case law of the Supreme Court and Eleventh Circuit Court of Appeals, Defendants owed a constitutional duty to protect Jamari from a known risk of serious harm, and a breach of that duty takes place when prison officials are deliberately indifferent to that risk. A failure to act in response to a known risk of death, such as that displayed by Defendants Berry, Primus, and other Department of Corrections employees whose identities are yet unknown, rises to the level of deliberate indifference.

24.

The day after his meeting with Defendant Primus, Jamari spoke to his father, Plaintiff McClinton, by telephone on August 10, 2021. During this call, Jamari said that he had told a staff member at Baldwin that he was supposed to be in protective custody, but it did not appear that Jamari was in protective custody at the time of the call. Plaintiff McClinton believed that the person Jamari had told this to was a guard at Baldwin, but it could have been a counselor or some other staff member.

25.

It is presently unknown whether Jamari told anyone at Baldwin other than Primus that he was supposed to be in protective custody, but that was the entire

purpose of the transfer – a fact which would have been known by Defendants Berry, Primus, and other staff members whose identities are presently unknown.

26.

It is not known whether he was ever in protective custody at Baldwin, or whether he was placed in protective custody for a short period and then released, but he was clearly not under protection at the time of his death the following day. Plaintiffs are presently unable to plead the specific circumstances of their son's death because that information has not yet been released due to its sensitive nature and the fact that there are ongoing investigations.

27.

On August 11, 2021, Jamari was stabbed and killed by an inmate who should not have been given access to him, and the fact that he was able to get close enough to Jamari to stab him indicates that Jamari was not in protective custody. That inmate, who has been charged with the murder, had known connections with the gang members at Phillips who ordered the killing.

28.

A few days later, another inmate who was reportedly a witness to Jamari's murder was also murdered at Baldwin after giving a statement to investigators, which is consistent with a pattern of deliberate indifference to the risk of violence

there and at other Georgia prisons which is presently the subject of a federal Department of Justice investigation.

29.

Plaintiffs would not oppose a temporary stay of this litigation while the state criminal prosecution and federal civil rights investigations are ongoing, as long as they are eventually given access to the findings of those investigations and are ultimately entitled to their day in court.

## **EIGHTH AMENDMENT CLAIM UNDER 42 U.S.C. §1983**

30.

The aforementioned misconduct of Defendants in knowingly failing to protect Jamari McClinton from a known risk of serious harm constitutes deliberate indifference to a substantial risk of harm in violation of the Eighth Amendment of the United States Constitution and other applicable law.

31.

As a direct and proximate result of the aforementioned deliberate indifference of said Defendants, Jamari McClinton died a premature death at the age of 21, for which Plaintiffs are entitled to recover for his wrongful death in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

32.

Plaintiffs intend to seek appointment of an administrator by the Probate Court to also assert a claim on behalf of Jamari's estate for his conscious pain and suffering as well as funeral, medical, and other necessary expenses. Once an administrator is appointed, Plaintiffs intend to amend the Complaint accordingly.

33.

Because the aforementioned misconduct of said Defendants arose to a level of deliberate indifference, Plaintiffs are also entitled to recover punitive damages in an amount to be determined by the enlightened conscience of fair and impartial jurors.

34.

Said Defendants are not entitled to qualified immunity because the law was clearly established long before August 2021 that it is an Eighth Amendment violation for prison personnel to be deliberately indifferent to an inmate's risk of murder by another inmate.

35.

Plaintiffs are entitled to recover attorney's fees for this Count under 42 U.S.C. §1988.

**<u>A JURY TRIAL IS DEMANDED</u>.**

WHEREFORE Plaintiffs demand as follows:

a) That this action be tried by a jury;

b) That judgment be entered in favor of Plaintiffs and against Defendants in an amount to be determined by the enlightened conscience of fair and impartial jurors;

d) That Plaintiff be awarded attorney's fees and reasonable expenses of litigation;

e) That all costs of this action be taxed against Defendants; and

f) That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this 14th day of March, 2022.

/s/ Craig T. Jones
_____
CRAIG T. JONES
Ga. Bar No. 399476
Attorney for Plaintiffs

CRAIG T. JONES, P.C.
Post Office Box 129
Washington, Georgia 30376
(678) 643-0062
craigthomasjones@outlook.com