**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **RICARDO MCCLINTON and DORIS JONES, Individually and as Administrators of the Estate of JAMARI MCCLINTON,** | ) ) ) ) | |
| | ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION NO. 5:22-CV-109 (MTT)** |
| **Warden WALTER BERRY, _et al.,_** | ) ) ) | |
| **Defendants.** | ) ) ) | |

## ORDER

The plaintiffs Ricardo McClinton and Doris Jones, individually and as administrators of the estate of Jamari McClinton, claim that defendants Walter Berry, Jarvis Primus, James Perry, Eladio Abreu, and Nolita Moss violated the Eighth and Fourteenth Amendments by failing to protect Jamari from an inmate assault that resulted in his death.  Doc. 31.  Recently added defendants James Perry, Eladio Abreu, and Nolita Moss (hereafter, the "new defendants") move to dismiss the plaintiffs' claims against them.  Doc. 36.  For the following reasons, the new defendants' motion (Doc. 36) is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

The plaintiffs are the parents of Jamari McClinton, who was stabbed and killed on August 11, 2021, at Baldwin State Prison ("BSP") shortly after his transfer from Phillips State Prison ("PSP").  Doc. 31 ¶ 5, 17, 27.  The plaintiffs contend that Jamari died

because of the defendants' deliberate indifference to Jamari's safety in violation of the Eighth Amendment.  *Id.* ¶ 29.

The new defendants—Perry, Abreu, and Moss—move to dismiss.  Doc. 36.  At all relevant times, Perry was the warden at PSP and was responsible for its day-to-day operations.  Doc. 31 ¶ 8A.  Abreu was a classification analyst in the Georgia Department of Corrections' ("GDC") central office, and he approved Jamari's transfer from PSP to BSP.  *Id.* ¶ 8B.  Moss was a shift supervisor at BSP at the time of Jamari's transfer.  *Id.* ¶ 8C.  The plaintiffs allege that Moss was "responsible for the security of inmates and staff during her working hours at BSP."  *Id.*

**A. Factual Background**

*1.  Jamari McClinton's death at BSP*

While an inmate at PSP in July 2021, Jamari was involved in a fight with another inmate, whom the plaintiffs allege was a prison gang leader.  Doc. 31 ¶ 10.  After the fight, a "bounty-killing 'contract'" was allegedly placed on Jamari and disseminated by social media to "gang affiliates throughout the prison system."  *Id.*  The plaintiffs claim they were contacted by gang members as well, who threatened violence against Jamari unless the plaintiffs paid the gang members through Cash App.  *Id.*  Because of the fight and the subsequent bounty-killing contract, Perry placed Jamari in protective custody at PSP.  *Id.* ¶ 12, 13.  Perry ultimately transferred Jamari to BSP because of safety concerns.  *Id.* ¶ 13.  Allegedly alerted to the transfer, a gang leader at PSP posted on social media that Jamari would be transferred and instructed that Jamari "should not be 'touched' until after he was transferred."  *Id.* ¶ 15.  The PSP gang leader also "alerted gang members in other prisons to be on the lookout for him if they encountered him in

the general population." *Id.* The plaintiffs claim that they called the GDC when Jamari was transferred to ensure that he remained in protective custody after his transfer to BSP. *Id.* ¶ 16.

Jamari was transferred to BSP on or about August 6, 2021, but was not placed in protective custody. *Id.* ¶¶ 17, 22. The plaintiffs allege that on August 9 Jamari was given intake forms and spoke to Primus, a counselor at BSP, about the bounty-killing contract. *Id.* ¶ 18. Jamari's conversation with Primus was not recorded in Jamari's case notes. *Id.* ¶ 19. The next day, Jamari told his father that he spoke to a "staff member" at BSP but had not been placed in protective custody. *Id.* ¶ 24.

On August 11, Jamari was stabbed to death by another inmate in the general population yard at BSP. *Id.* ¶ 27. The inmate has since been charged with murder and the plaintiffs claim that Jamari's killer has known connections to the alleged gang leader with whom Jamari had an altercation. *Id.*

### 2. The plaintiffs' allegations of the new defendants' involvement in Jamari's death

The plaintiffs claim that defendants Perry, Abreu, and Moss each had knowledge of the risk of harm to Jamari and were deliberately indifferent when they failed to protect him. Doc. 31 ¶ 29. First, the plaintiffs allege that Perry placed Jamari in protective custody at PSP because of the bounty-killing contract but transferred Jamari without communicating with BSP to ensure that Jamari would be protected at BSP. *Id.* ¶ 26A. Second, the plaintiffs allege that Abreu knew that Jamari was transferred to BSP to protect him "from the known risk of murder," but failed to communicate with BSP staff "to ensure that appropriate measures were taken in response to that known risk." *Id.* ¶ 26B. Finally, the plaintiffs claim that Moss spoke with Jamari at least once about his

several requests to be placed into protective custody but did not report her conversation

so that Jamari's case could be evaluated.  *Id.* ¶ 26C.

**B. Procedural History**

The plaintiffs filed their original complaint on March 14, 2022.  Doc. 1.  In that

complaint, the plaintiffs sued only the nonmoving defendants, Primus and Berry, in their

individual capacity for Jamari's wrongful death.  *Id.* at 1.  On April 8, 2024, the Court

granted the plaintiffs' motion to amend their original complaint, and the plaintiffs added a

failure to protect claim against the new defendants.  Doc. 31.  Because the plaintiffs

had, by then, been appointed administrators of Jamari's estate, their amended

complaint also added a claim against all the defendants on behalf of Jamari's estate for

Jamari's pain and suffering, medical expenses, and funeral expenses.  *Id.* ¶¶ 8D, 32.

The new defendants move to dismiss the plaintiffs' claims against them on four

grounds.  Doc. 36.  First, they contend that the plaintiffs' wrongful death claim should be

dismissed because it is barred by the statute of limitations.  *Id.* at 3.  Second, they argue

that the plaintiffs' complaint should be dismissed for failure to state a claim.  *Id.*  Third,

they argue that because the plaintiffs have failed to state a claim for a constitutional

violation, they are entitled to qualified immunity.  *Id.*  Finally, they claim they are entitled

to Eleventh Amendment immunity.  *Id.*

## II. STANDARD

**A. Statute of Limitations**

Dismissal on statute-of-limitations grounds is "'appropriate *only* if it is apparent

from the face of the complaint that the claim is time-barred' and '*only* if it appears

beyond a doubt that [a plaintiff] can prove no set of facts that toll the statute.'"  *Sec'y of*

*Lab. v. Labbe*, 319 F. App'x 761, 764 (11th Cir. 2008) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005), *overruled on other grounds by Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010) (alteration in original)).

**B**. **Fed. R. Civ. P. 12(b)(6)**

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. "Factual allegations that are 'merely consistent with a defendant's liability' fall short of being facially plausible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.  Where there are dispositive issues of law, a court may dismiss a claim

regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

## III. DISCUSSION

**A. The Plaintiffs' Wrongful Death Claim Against Perry, Abreu, and Moss is Barred by the Statute of Limitations.**

The new defendants argue that the plaintiffs' wrongful death claim is barred by the statute of limitations because they did not bring the claim within two years of the accrual of the cause of action and because the statute of limitations has not been tolled.[1]  Doc. 36 at 4-5.  The plaintiffs argue that the statute of limitations for their wrongful death claim is tolled by both O.C.G.A. §§ 9-3-92 (tolling for unrepresented estates) and 9-3-99 (tolling for crime victims), rendering their claim timely.  Doc. 37 at 15-16.  The Court concludes that the plaintiffs' wrongful death claim is untimely and no Georgia tolling provision applies.

*1. The plaintiffs' wrongful death claim against the new defendants is untimely.*

Under 42 U.S.C. § 1983, a person who deprives someone of their constitutional rights "shall be liable to the party injured in an action at law."  42 U.S.C. § 1983.  Where death results from the alleged constitutional violations, the Court looks to state law, in this case Georgia, to determine who can bring claims under 42 U.S.C § 1983. *Carringer v. Rodgers*, 331 F.3d 844, 849 (11th Cir. 2003).  Under Georgia law, when an individual dies because of a tortious act, two types of claims arise—1) the decedent's estate may bring a claim for damages sustained by the decedent during their lifetime, and 2) certain next of kin may bring a wrongful death claim to recover the full value of

---

[1] The new defendants concede that the statute of limitations for the estate's claim was tolled by O.C.G.A. § 9-3-92 until his parents were appointed administrators of his estate. Doc. 36 at 5.

the decedent's life.  *See* O.C.G.A. §§ 9-2-41, 51-4-2–6.  The Eleventh Circuit has held

that because Georgia's wrongful death statute is incorporated into § 1983, both estate

claims and wrongful death claims can be brought after a constitutional violation that

causes death.  *See Brazier v. Cherry,* 293 F.2d 401, 409 (5th Cir. 1961)[2]*; see also*

*Carringer,* 331 F.3d at 850 (holding that a parent has standing to sue for wrongful death

under § 1983).

Because § 1983 does not provide a statute of limitations, courts also look to state

law to determine when a claim must be brought.  *Wallace v. Kato*, 549 U.S. 384, 387

(2007).  "All constitutional claims brought under § 1983 are tort actions, subject to the

statute of limitations governing personal injury actions in the state where the § 1983

action has been brought."  *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).

Georgia has a two-year statute of limitations for personal injury and wrongful death

actions.  *See* O.C.G.A. § 9-3-33.

The Court must first determine whether it is apparent from the face of the

complaint that the plaintiffs' wrongful death claim is "beyond a doubt" barred by

Georgia's two-year statute of limitations.  *Labbe*, 319 F. App'x at 764 (quoting *Tello,* 410

F.3d at 1288 n.13, *overruled on other grounds by Merck & Co.,* 559 U.S. 633).  The

plaintiffs allege that Jamari was killed on August 11, 2021, and their wrongful death

cause of action accrued on that date.  Doc. 31 ¶ 27; *see Wallace*, 549 U.S. at 388 ("[t] is

'the standard rule that [accrual occurs] when the plaintiff has "a complete and present

cause of action."'") (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v.*

*Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).  Therefore, the plaintiffs had until

---

[2] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

August 11, 2023, to file their wrongful death claim. The plaintiffs' amended complaint, which first asserted a wrongful death claim against the new defendants, was filed on April 8, 2024, almost one year after the statute of limitations ran. Doc. 31 at 17. It is clear from the face of the plaintiffs' complaint that their wrongful death claim against the new defendants, absent tolling, is barred by Georgia's two-year statute of limitations.

>    *2. No tolling provisions save the plaintiffs' wrongful death claim against the new defendants.*

The plaintiffs argue that, even though their claim was not filed within the two-year statute of limitations, two tolling provisions, O.C.G.A. §§ 9-3-92 and 9-3-99, save their claim. Doc. 37 at 13. They do not. First, O.C.G.A. § 9-3-92, which tolls the statute of limitations for an *estate's* claims until the appointment of an administrator, does not apply to the plaintiffs' wrongful death claim because that claim does not belong to Jamari's estate.[3] As the Georgia Court of Appeals made clear in *Metropolitan Atlanta Rapid Transit Authority v. Maloof*, O.C.G.A. § 9-3-92 only applies "when the estate has an actual interest in the suit or the claim." 304 Ga. App. 824, 827 (2010) (citing *Patellis v. King*, 52 Ga. App. 118, 126 (1935)). Because "the proceeds of a wrongful death action do not become part of the decedent's estate," the estate has no actual interest in wrongful death claims. *Id.* at 827. Because Jamari's estate has no interest in Jamari's parents' wrongful death claim, the statute of limitations for that claim is not tolled by O.C.G.A. § 9-3-92.[4]

---

[3] Georgia's wrongful death statute specifically vests a wrongful death claim in certain next of kin. O.C.G.A. §§ 51-4-2 to -5.

[4] The plaintiffs' complaint clearly distinguishes between their wrongful death claim and the estate's claim:

- As a direct and proximate result of the aforementioned deliberate indifference of said Defendants, Jamari McClinton died a premature death at the age of 21, for which plaintiffs are entitled to recover for his wrongful death in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors. Doc. 31 ¶ 31.

Second, O.C.G.A. § 9-3-99, which tolls the statute of limitations for torts claims brought by crime victims while a criminal prosecution is pending, does not apply to the plaintiffs' wrongful death claim because the plaintiffs were not the "victims" of a crime. The Georgia Court of Appeals has held that the term "victim" in O.C.G.A. § 9-3-99 means only the person "'acted on,' i.e., the person who was shot by the shooter." *Hicks v. Universal Health Servs., Inc.*, 364 Ga. App. 769, 769 (2022).  The court declined to extend the definition of "victim" to family members of the decedent and, instead, held that the statute of limitations for wrongful death claims brought by family members of a decedent is not tolled under O.C.G.A. § 9-33-99. *Id.* at 776.  Here, the plaintiffs, Jamari's parents, claim damages for Jamari's wrongful death.  Doc. 31 ¶ 31.  While there is a pending criminal prosecution of Jamari's murderer, the plaintiffs are not the "victims" of that crime for tolling purposes because it was Jamari, not the plaintiffs, who was "acted on." *Hicks*, 364 Ga. App. at 769.  Therefore, the statute of limitations for the plaintiffs' wrongful death claim is not tolled by O.C.G.A. § 9-3-99. '

The plaintiffs argue that *Hicks* "has no bearing on federal law" because it "was a decision by one panel of an intermediate state appellate court on an issue of state law that the Georgia Supreme Court has not yet addressed."  Doc. 37 at 17.  But "[a] federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983).  "This rule applies even where, as here, there is only

- Plaintiffs are the duly appointed Co-Administrators of Jamari's estate, and in that capacity they are entitled to recover damages on behalf of the estate for his conscious pain and suffering as well as funeral, medical, and other necessary expenses. *Id.* ¶ 32.

one intermediate appellate decision." *Royal Palm Village Residents, Inc. v. Slider*, 57

F.4th 960, 965 (11th Cir. 2023). The plaintiffs have provided no indication, persuasive

or otherwise, that the Georgia Supreme Court would interpret O.C.G.A. § 9-3-99

differently than the Georgia Court of Appeals did in *Hicks*. The fact that the Georgia

Supreme Court has not addressed the issue does not mean that the Court would take a

different approach. In fact, silence on the issue could mean that the Georgia Supreme

Court approves of the Georgia Court of Appeals' decision in *Hicks*. In any event, the

plain language of O.C.G.A. § 9-3-99 clearly limits tolling to actual crime victims, not their

next of kin, and the Court finds *Hicks* persuasive even if not binding.

The plaintiffs further argue that their wrongful death claim is tolled because it is a

"generic personal injury claim" and "any tolling provision that extends the statute for

plaintiffs in the typical personal injury case also applies across the board to all § 1983

claims, irrespective of whether the constitutional violation resulted in death or not." Doc.

37 at 13, 17. To support their argument, the plaintiffs quote *Robertson*, in which the

Eleventh Circuit stated, "[t]he incorporation of Georgia's wrongful death statute [in

*Brazier v. Cherry*] was not done in response to a violation of the wife's rights: it was

done to remedy the violation of the *decedent's* rights." 420 F.3d 1254, 1261 (11th Cir.

2005). The plaintiffs' logic is unclear, but neither *Brazier* nor *Robertson* supports their

conclusion. First, *Brazier* held that a wrongful death action could be brought under §

1983. 293 F.2d at 409. The court did not somehow combine the two causes of action,

but rather made clear that, under § 1983, claims are available for two classes of

victims—the decedent and the decedent's family members. *Id.* at 409. The court did

not say that estate claims and wrongful death claims should be treated as one under §

1983, as the plaintiffs seem to argue.  *Id. Robertson* likewise acknowledges that estate claims and wrongful death claims are distinct, stating that "the survivors' claims were separate from the claims of the decedents' estates."  420 F.3d at 1254.  And neither of those cases have anything to say about statutes of limitations.

In sum, applying Georgia law and in the absence of any federal authority requiring or allowing the Court to ignore Georgia law, the statute of limitations on the plaintiffs' wrongful death claim is not tolled by either O.C.G.A. §§ 9-3-92 and 9-3-99. [5] Accordingly, the plaintiffs' wrongful death claim against the new defendants is untimely and the new defendants' motion to dismiss that claim against them is **GRANTED**.

**B. Defendants Perry, Abreu, and Moss are not entitled to qualified immunity.**

The new defendants argue that they are entitled to qualified immunity because 1) the plaintiffs fail to state a claim for Eighth Amendment failure to protect, and 2) the plaintiffs fail to allege that the alleged constitutional violation was clearly established at the time of Jamari's death.  Doc. 36 at 7-12.  The Court disagrees.

The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

[5] The Court understands that under certain circumstances, an amended complaint may relate back to the original filing date even if that amendment adds new defendants.  *See* Fed. R. Civ. P. 15(c).  However, understandably, the plaintiffs do not contend that their amended complaint relates back to their original complaint.  Even if the plaintiffs had raised a relation back argument, their wrongful death claim against the new defendants would not relate back to their original complaint.  Under Fed. R. Civ. P. 15(c), an amended complaint adding new defendants does not relate back unless the added parties "(1) received such notice of the action that [they] will not be prejudiced in defending on the merits, and (2) knew or should have known that the action would be brought against [them], but for a mistake concerning the proper parties' identity."  The plaintiffs do not allege they were mistaken of the identities of the proper parties, only that they added the defendants "[n]ow that parties have completed discovery."  Doc. 31 ¶ 8.  The realization that additional parties should be added is not the same as a mistake regarding the parties' identities and, thus, the plaintiffs' complaint does not establish the requirements for relation back.

known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Although qualified immunity provides government officials with a formidable shield, their entitlement to raise that shield is not automatic … the official bears the initial burden of raising the defense of qualified immunity by proving that he was acting within his authority."  *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018).  "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'"  *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).  Plaintiffs do not dispute that the new defendants were acting within their discretionary authority, so the burden shifts to them to show the new defendants violated Jamari's clearly established rights.  *See* Doc. 37 at 4-13.

To overcome a qualified immunity defense, plaintiffs must allege that (1) the facts, viewed in their favor, establish a constitutional violation; and (2) the new defendants violated clearly established law at the time of the alleged violation.  *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).  This two-step analysis may be done in whatever order is deemed most appropriate for the case.  *Lewis*, 561 F.3d at 1291 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

*1. The plaintiffs plausibly allege an Eighth Amendment failure to protect claim against defendants Perry, Abreu, and Moss.*

The plaintiffs have met their burden of showing a constitutional violation by pleading facts sufficient to state an Eighth Amendment violation under § 1983.  Under the Eighth Amendment, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates."  *Caldwell v. Warden, FCI Talladega*, 748 F.3d

1090, 1099 (11th Cir. 2014); *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment.").  To state a claim for deliberate indifference to an inmate's safety, a plaintiff must plausibly allege: (1) a substantial risk of serious harm; (2) deliberate indifference to that risk; and (3) causation.  *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013); *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard."  *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016).  To prevail, a plaintiff must allege "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety."  *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane,* 835 F.3d at 1307).  Plaintiffs can make this showing by demonstrating either a "general threat" to inmates based on dangerous conditions in the prison or particular area of the prison, or by an individualized risk based on a "specific threat" to the prisoner.  *Marbury*, 936 F.3d at 1233, 1235; *see also Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005).

To establish the second element—deliberate indifference—a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'"  *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (quoting *Farmer*, 511 U.S. at 839).  Subjective awareness requires that the defendant "must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference."
*Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (citing *Farmer*,
511 U.S. at 837).  The determination of whether a risk has been disregarded is
objective: "[T]he [defendant] must have responded to the known risk in an unreasonable
manner."  *Marbury*, 936 F.3d at 1233; *Wade*, 106 F.4th at 1262.  In other words, "a
defendant who 'respond[s] reasonably' to a risk, even a known risk, 'cannot be found
liable' under the Eighth Amendment." *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511
U.S. at 837) (internal citation omitted).  To establish that "the defendant acted with
'subjective recklessness as used in the criminal law'" the plaintiff must allege "that the
defendant was subjectively aware that his own conduct put the plaintiff at substantial
risk of serious harm."  *Id.*

  "Finally, the plaintiff must show a 'necessary causal link' between the defendant's
failure to act reasonably and the plaintiff's injury."  *Marbury*, 936 F.3d at 1233 (quoting
*Rodriguez*, 508 F.3d at 623).  This causal connection requires that the defendant "(1)
had the means substantially to improve the inmate's safety, (2) knew that the actions he
undertook would be insufficient to provide the inmate with reasonable protection from
violence, and (3) had other means available to him which he nevertheless disregarded."
*Nelson v. Tompkins*, 89 F.4th 1289, 1298 (11th Cir. 2024) (quoting *Rodriguez*, 508 F.3d
at 622).

    a. The plaintiffs plausibly allege an Eighth Amendment failure to protect
    claim against defendant Perry.

  Perry argues that the plaintiffs have failed to allege sufficient facts to state a
claim against him because the plaintiffs' allegations "rely on an unwarranted deduction
of fact—that knowledge of a risk of harm at [PSP] would give rise to knowledge of a risk

-14-

of harm at all other prison facilities."  Doc. 36 at 9.  The Court concludes that the plaintiffs rely on sufficient facts that amount to more than an unwarranted deduction.

First, the plaintiffs have alleged facts that Jamari plausibly faced a substantial risk of serious harm. Specifically, the plaintiffs allege that gang leaders placed a "bounty-killing 'contract'" on Jamari's life.  Doc. 31 ¶ 10.  They also allege that the gang leaders posted the contract on social media, instructing gang members in other prisons to "be on the lookout for him."  *Id.* ¶ 15.

Second, the plaintiffs plausibly allege that Perry was deliberately indifferent to Jamari's risk of serious harm.  The plaintiffs allege that Perry was subjectively aware of the substantial risk of serious harm because he "was aware of the murder-for-hire contract against Jamari," "kept [Jamari] in protective custody at [PSP]," and "decided that Jamari should be transferred to another facility."  Doc. 31 at ¶¶ 13, 26A.  The plaintiffs further allege that Perry failed to communicate with BSP to ensure Jamari's protection when he arrived at BSP, facts that if believed tend to show that Perry disregarded a known risk of harm to Jamari.  *Id.* ¶ 26A.  Finally, the plaintiffs' allegation that Perry "knew it would have been reasonable for him to communicate those facts to the warden and staff at Baldwin" and "failed to do so…despite the obvious need for such communications in this case" sufficiently alleges "subjective recklessness as used in criminal law."  *Id.*; *Wade*, 106 F.4th at 1255.  The plaintiffs have, thus, plausibly alleged Perry's deliberate indifference.

Third, the plaintiffs' complaint has plausibly alleged the "necessary causal link" between Jamari's death and Perry's conduct.  *Marbury*, 936 F.3d at 1233 (quoting *Rodriguez*, 508 F.3d at 623).  The plaintiffs allege that Perry had the means to

substantially improve Jamari's safety by communicating the risk of harm to the staff at BSP.  Doc. 31 ¶ 26A.  The plaintiffs further allege that Perry had "engaged in such communications in the past," and "knew that it would have been reasonable for him" to communicate with BSP regarding Jamari's safety.  The allegations are sufficient to create an inference that Perry "knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence."  *Nelson*, 89 F.4th at 1289.  The allegations are also sufficient to plausibly show that Perry had other means available to him, and that he disregarded those means.  The plaintiffs have, thus, alleged sufficient facts to establish an Eighth Amendment failure to protect claim against Perry.

> b. The plaintiffs plausibly allege an Eighth Amendment failure to protect claim against defendant Abreu.

Abreu argues that the plaintiffs' complaint does not allege that Abreu would have knowledge of a risk of harm at BSP and that the plaintiffs "at most…allege that Defendant Abreu knew about the transfer request and that Jamari needed to be protected from a high-ranking gang member at [PSP]."  Doc. 36 at 9.  But the plaintiffs allege that Abreu was deliberately indifferent to a threat of harm from gang members, not just at PSP, but at BSP as well.

The plaintiffs plausibly allege a substantial risk of serious harm to Jamari at both PSP and BSP.  *See* Doc. 31 at ¶¶ 10, 15.  The plaintiffs further allege that "Abreu had actual knowledge of the transfer request and case notes for Jamari, as well as the fact that Jamari needed to be protected from a high-ranking gang leader and his gang affiliates."  *Id*. ¶ 26B.   The plaintiffs plausibly allege subjective knowledge of a risk of harm, and subjective knowledge that Jamari faced that harm at BSP.  The plaintiffs

allege facts sufficient to show Abreu's disregard of the risk as well: "[Abreu] approved [Jamari's] transfer without facilitating any communications between the staffs of [PSP] and [BSP] to ensure that appropriate measures were taken in response to that known risk." *Id*. The allegation that Abreu knew of the risk to Jamari and failed to take steps to communicate with PSP or BSP regarding Jamari's safety is sufficient to draw an inference that Abreu acted unreasonably and with the subjective recklessness required for deliberate indifference. Thus, the plaintiffs have alleged sufficient facts that Abreu was deliberately indifferent to a substantial risk of harm to Jamari.

The plaintiffs also plausibly allege the "necessary causal link" between Jamari's murder and Abreu's actions. *Rodriguez*, 508 F.3d at 623. The plaintiffs allege that Abreu failed to take "appropriate measures," such as communicating with either BSP or PSP to make sure that Jamari was put into protective custody or otherwise protected from the gang members at BSP, and thus plausibly allege that Abreu had the means to help ensure Jamari's safety. Doc. 31 ¶ 26B. While the plaintiffs do not specifically allege that Abreu knew his actions were insufficient to protect Jamari from violence, such an inference can be drawn from the allegation that Abreu knew that Jamari needed protection. *Id*. If Abreu knew that Jamari needed protection, then a reasonable inference can be drawn that he knew doing nothing to provide such protection would be insufficient. Further, the plaintiffs plausibly allege that Abreu had other means—namely, communicating with BSP and PSP to ensure Jamari was given protection at BSP— which he disregarded. *Id*. Consequently, the plaintiffs have plausibly alleged the causation element necessary for a failure to protect claim. Accordingly, the plaintiffs

have pleaded sufficient facts to state an Eighth Amendment failure to protect claim against Abreu.

> c. The plaintiffs plausibly allege an Eighth Amendment failure to protect claim against Defendant Moss.

Finally, Moss argues that the plaintiffs fail to state a claim against her because "the [p]laintiff[s] must allege 'some further reason…that a prison official could have concluded that a particular threat evidenced a substantial threat, rather than the mere possibility, of serious harm.'"  Doc. 36 at 10 (quoting *Marbury*, 936 F.3d at 1236).  But the plaintiffs have alleged facts sufficient to show Moss's deliberate indifference to a substantial threat of serious harm.  The plaintiffs allege:

> Defendant Moss was aware that Jamari had requested to be put in protective [custody] on more than one occasion after he arrived at Baldwin, and she personally spoke with him about at least one of those requests yet failed to take a statement from Jamari, to make any log entry, or to otherwise provide the required documentation of the requests so that it could be reviewed and a determination could be made about whether he needed to be placed in voluntary protective custody…or placed in involuntary protective custody for his own safety….

Doc. 31 ¶ 26C.  The plaintiffs plausibly allege subjective knowledge of the threat to Jamari by alleging that Jamari explicitly told Moss he needed to be in protective custody, and that Moss was aware that Jamari had requested protective custody several times.  *Id*.  Further, the plaintiffs' allegation that Moss failed to make a record of the conversation or ensure that someone would review Jamari's case plausibly alleges that Moss disregarded the risk to Jamari and that she acted unreasonably and with subjective recklessness.  *Id*.  The plaintiffs have plausibly alleged a substantial threat of harm and deliberate indifference.

The plaintiffs have also plausibly alleged the necessary causation.  The plaintiffs claim that Moss could have, but did not, note her conversation with Jamari so that Jamari's case would have been reviewed.  *Id*.  The plaintiffs also plausibly allege that Moss had other means to substantially improve Jamari's safety, including recording their conversation in Jamari's case notes.  *Id.*  The plaintiffs further plausibly allege that Moss knew Jamari could be in danger and "failed to take reasonable measures which they knew were available to them," and thus tend to establish that Moss knew her actions were not sufficient to protect Jamari and that Moss disregarded other means of protection available to her.  *Id*. ¶ 29.  The plaintiffs have, therefore, alleged facts sufficient to state an Eighth Amendment failure to protect claim against Moss.

By plausibly alleging an Eighth Amendment failure to protect claim against defendants Perry, Abreu, and Moss, the plaintiffs have met their burden of establishing the first qualified immunity element—a constitutional violation.

*2. Jamari's Eighth Amendment right to protection was clearly established at the time of his death.*

A right becomes "clearly established" in three ways.  *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).  First, the plaintiffs can show that a materially similar case has already been decided, consisting of binding precedent by the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court.  *Id*. Second, the plaintiffs can show that a broader clearly established principle should control the novel facts of the particular case—that is, the unconstitutionality of the instant conduct must be apparent by looking to the guiding principles of the previous case, irrespective of the underlying factual situation.  *Id*.  Third, the plaintiffs can show

that the conduct is so egregiously unconstitutional that prior case law is unnecessary. *Id*.

The plaintiffs allege "under the Eighth Amendment and clearly established case law of the Supreme Court and Eleventh Circuit Court of Appeals, Defendants owed a constitutional duty to protect Jamari from a known risk of serious harm…." Doc. 31 ¶ 23. The Court agrees. The Eleventh Circuit has held that an inmate has an Eighth Amendment right to be protected from known violence, especially when that inmate has received threats to their life. *See Marsh v. Butler Cnty.,* 268 F.3d 1014 (11th Cir. 2001) ("But at the time of the assaults in this case, it was clearly established in this circuit that it is an unreasonable response for an official to do nothing when confronted with prison conditions… that pose a risk of serious physical harm to inmates."), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) ("[I]t is well settled that a prison inmate has a constitutional right to be protected…from physical assault by other inmates.").

In *Rodriguez*, an inmate who was housed in administrative segregation, learned that gang members were threatening to kill him. *Rodriguez*, 508 F.3d at 613. The inmate told prison officials that he needed to be placed in protective custody, but they nevertheless released him to general population, where he was stabbed by other inmates. *Id*. The Eleventh Circuit vacated summary judgment for the defendants, holding that a reasonable juror could find that the defendants had subjective knowledge of a risk to the inmate and that the defendant's actions caused the inmate's injuries. *Id.* at 624. The facts of *Rodriguez* are, in all material aspects, identical to the facts alleged

here.  Thus, Jamari's Eighth Amendment right to be protected from known gang threats of violence was and is clearly established.

The plaintiffs have met their burden of alleging facts sufficient to show 1) an Eighth Amendment violation, and 2) a clearly established right.  Accordingly, the new defendants are not entitled to qualified immunity and their motion to dismiss for failure to state a claim is **DENIED**.

**C. Defendants Perry, Abreu, and Moss are not entitled to Eleventh Amendment Immunity.**

Finally, the new defendants argue, for some unfathomable reason, and clearly not a reason drawn from reading the amended complaint, that the plaintiffs' claims are barred by the Eleventh Amendment because the plaintiffs are suing the defendants in their official capacities.  Doc. 36 at 6-7.  In their amended complaint, the plaintiffs specifically allege "[a]t all times relevant herein, the above captioned Defendants were acting under color of law and are sued in their individual capacities."  Doc. 31 ¶ 9.  The new defendants' motion to dismiss on this ground is frivolous.

## IV. CONCLUSION

In sum, the plaintiffs' wrongful death claim against the new defendants is untimely and is barred by Georgia's statute of limitations.  Thus, the defendants Perry, Abreu, and Moss's motion to dismiss (Doc. 36) the plaintiffs' wrongful death claim against them is **GRANTED**.  However, the plaintiffs have alleged facts sufficient to state a claim that defendants Perry, Abreu, and Moss violated the Eighth Amendment by acting with deliberate indifference to Jamari's safety.  The plaintiffs have also alleged facts sufficient to establish that the new defendants are not entitled to qualified

immunity.  Accordingly, the defendants Perry, Abreu, and Moss's motion to dismiss for failure to state a claim is **DENIED**.

      **SO ORDERED**, this 25th day of September, 2024.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT